Michael Stephen McNULTY, Plaintiff,

v.

PRUDENTIAL–BACHE SECURITIES,
INC., Ira Bassin, and Andrew
Upton, Defendants.

No. CV–91–0852 (RJD).

United States District Court,
E.D. New York.

Dec. 27, 1994.

Michael Stephen McNulty, pro se.

Kenneth J. McCulloch, Grotta, Glassman &
Hoffman, New York City, for defendants.

## MEMORANDUM & ORDER

DEARIE, District Judge.

Plaintiff, Michael Stephen McNulty, brought this action against his former employer, Prudential–Bache Securities ("Prudential"), a manager of Prudential, Ira Bassin ("Bassin"), and Prudential's in-house counsel, Andrew Upton ("Upton"), alleging violations of Title VII of the Civil Rights Act of 1964, codified as amended, 42 U.S.C. § 2000e, *et seq.*, and the Jury Systems Improvement Act ("Jurors' Act"), 28 U.S.C. § 1875. Defendants moved for dismissal of the complaint or, in the alternative, summary judgment. The motion was referred to Magistrate Judge Azrack for a report and recommendation. After the report and recommendation was issued, both plaintiff and defendants filed timely objections. After considering the report as well as the objections made to the report, the Court concludes that the defendants' motion for summary judgment should be granted on all claims.

*Factual Background*

The factual background of this dispute is detailed more fully in Magistrate Judge Joan M. Azrack's report, familiarity with which is assumed. For these purposes, the relevant facts are as follows:

Plaintiff Michael Stephen McNulty was employed by Prudential from 1983 to April, 1989. At the commencement of his employment, McNulty, as a registered representative of the New York Stock Exchange ("NYSE"), signed a Securities Registration Form obligating him to arbitrate all disputes regarding his employment or its termination. The form provides in relevant part:

> I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person that is required to be arbitrated under the rules, constitutions or by-laws of the organizations with which I register.

Securities Registration Form U–4, ¶ 5. One of the rules to which McNulty agreed to abide by states:

> Any controversy between a registered representative and any member or member organization arising out of the employment or termination of employment of such reg-istered representative by and with such member or member organization shall be settled by arbitration at the instance of any such party. . . .

NYSE, Rule 347.

A dispute arose in 1988 when McNulty suffered a reduction in pay and was demoted from a Level I sales producer to a Level II sales producer. Prudential alleges that the demotion was due to McNulty's failure to meet the annual production quota for Level I producers. McNulty's production for 1988 was $108,971, while the production quota was $125,000. McNulty, although conceding that he did not meet the production quota, attributes his failure to meet the quota to the fact that he missed 13 days of work when he served on a federal grand jury.

McNulty filed an action with NYSE for binding arbitration of his claims against the defendants. At arbitration, where McNulty was represented by counsel, the panel of three arbitrators unanimously rejected his claims. McNulty then turned to the federal courts for relief and filed this suit alleging employment discrimination in violation of Title VII of the Civil Rights Act as well as violation of the Jurors' Act.

Defendants moved to dismiss the complaint and for summary judgment, primarily asserting that McNulty was bound by the arbitrators' decision denying him relief. Defendants' motion for summary judgment was referred to Magistrate Judge Azrack for a report and recommendation. Magistrate Judge Azrack recommended dismissing all claims except the Jurors' Act claim. Defendants filed objections to that portion of the report denying their motion for summary judgment. This Court, reviewing the issue *de novo, see* Rule 72, Fed.R.Civ.Proc.; 28 U.S.C. § 636(b), now grants defendants' motion for summary judgment on all claims.

## DISCUSSION

■ The principle question facing the Court is whether a claim made under the Jurors' Act, 28 U.S.C. § 1875, is arbitrable. If such a claim is non-arbitrable, as McNulty asserts and as Magistrate Judge Azrack suggested in her report, then McNulty is enti-

tled to proceed on the merits of his case in federal court. If, however, this Court finds, as it does so today, that claims under the Jurors' Act are arbitrable, then McNulty is not entitled to any relief by this Court because then the decision of the arbitrators is binding upon him and will not be disturbed.

■ Although the question of whether claims under the Jurors' Act are arbitrable appears to be an issue of first impression, the Supreme Court has provided some guidance in determining whether or not a particular statutory claim is arbitrable under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.* The Court has repeatedly noted in recent years that "federal policy favor[s] arbitration." *See, e.g., Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 225, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987). Indeed, the Court has stated that, " 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.' " *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 625, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985) (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 22–25, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 (1983)). Only if the party opposing arbitration can show that Congress intended to remove a claim from the scope of the FAA should a court conclude that the statutory claim is non-arbitrable. *McMahon,* 482 U.S. at 225–27, 107 S.Ct. at 2337–38.

■ Congress' intent to remove a particular type of claim from arbitration must be deduced from the statute's text, legislative history, "or from an inherent conflict between arbitration and the statute's underlying purposes." *Id.* at 227, 107 S.Ct. at 2338. There is no evidence in the statute's text or legislative history that Congress intended to remove claims under the Jurors' Act from arbitration; nor is there an inherent conflict between arbitration and the purposes of the Act.

The Jurors' Act makes it unlawful for an employer to "discharge, threaten to discharge, intimidate, or coerce any permanent employee by reasons of such employee's jury service...." 28 U.S.C. § 1875(a). Employers who violate the Act are liable for dam-ages, can be assessed a civil fine of up to $1,000, may be enjoined from further violations, and may be ordered to reinstate the employee to the same position they held prior to the termination without loss of seniority or other benefits. 28 U.S.C. §§ 1875(b)–(c). The statute also provides for the appointment of counsel by the district court in the district in which the employer maintains a place of business, "upon a finding of probable merit in such claim." 28 U.S.C. § 1875(d)(1). Since the statute makes no mention of whether claims brought under its scope are arbitrable, McNulty must rely on either the legislative history of the statute or an inherent conflict between the statute and arbitration to meet his burden of showing this claim to be non-arbitrable.

The only possible indication in the legislative history that Congress intended to remove claims under the Jurors' Act from arbitration is Congress' recognition of the public purpose of the Act. *See, e.g.,* H.R.Rep. 95–1652, *reprinted in,* 1978 U.S.C.C.A.N. 5477, 5488 ("[T]he duty imposed upon employers by this section runs not only to the employee but even more importantly to the United States and its citizens in protecting the judicial process and the right to trial by jury.... Generally, this section is intended to ensure the continued availability in the United States District Courts of juries...."). The Supreme Court, however, has stated that claims made under acts which have public purposes can be subject to binding arbitration. *See Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 27, 111 S.Ct. 1647, 1653, 114 L.Ed.2d 26 (1991) ("We do not perceive any inherent inconsistency between those [important social policies] and enforcing agreements to arbitrate age discrimination claims."). The Supreme Court has put to rest "the old judicial hostility to arbitration," *Rodriguez De Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 480, 109 S.Ct. 1917, 1920, 104 L.Ed.2d 526 (1989), and the arbitrability of claims, even under statutes which are designed to further broader social purposes, has been acknowledged in any number of circumstances. *Gilmer,* 500 U.S. at 27, 111 S.Ct. at 1653 ("The Sherman Act, the Securities Exchange Act of 1934, RICO,

and the Securities Act of 1933 all are designed to advance important public policies, but ... claims under those statutes are appropriate for arbitration."); *see, e.g., id.* (finding claims under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634, to be arbitrable); *McMahon*, 482 U.S. at 220, 107 S.Ct. at 2332 (finding Section 12(2) of the Securities Act of 1933 and civil RICO provisions, 18 U.S.C. § 1961 *et seq.*, to be arbitrable); *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) (finding the Sherman Act, 15 U.S.C. § 78j(b), to be arbitrable); *Nghiem v. NEC Electronic, Inc.*, 25 F.3d 1437 (9th Cir.) (overruling earlier decision and finding anti-trust claims to be arbitrable), *cert. denied,* —— U.S. ——, 115 S.Ct. 638, 130 L.Ed.2d 544 (1994); *Saari v. Smith Barney, Harris Upham & Co.*, 968 F.2d 877 (9th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 494, 121 L.Ed.2d 432 (1992) (finding claims under the federal Employee Polygraph Protection Act, 29 U.S.C. §§ 2001–2009, to be arbitrable); *Mago v. Shearson Lehman Hutton, Inc.*, 956 F.2d 932 (9th Cir. 1992) (finding Title VII claims to be arbitrable); *Willis v. Dean Witter Reynolds, Inc.*, 948 F.2d 305 (6th Cir.1991) (finding discrimination claims to be arbitrable); *Bird v. Shearson Lehman/American Express*, 926 F.2d 116 (2d Cir.) (finding ERISA claims to be arbitrable), *cert. denied,* 501 U.S. 1251, 111 S.Ct. 2891, 115 L.Ed.2d 1056 (1991).

Since neither the text nor the legislative history of statute precludes arbitration, the Jurors' Act must be found to be arbitrable unless the Court concludes that there is an inherent conflict between the Act and arbitration. Magistrate Judge Azrack suggested

that an inherent conflict might exist between arbitration and the provision of the Jurors' Act which provides for the appointment of counsel by the District Court "upon a finding of probable merit." 28 U.S.C. § 1875(d)(1). The involvement of the District Court in appointing counsel to represent aggrieved employees in cases which the court has determined have probable merit, does not, however, preclude arbitration.

■ The appointment of counsel provision can be utilized by the employee even in cases where the employee's claim is subject to mandatory and binding arbitration. A possible procedure, if McNulty chose to exercise his right for the appointment of counsel, would have been to apply to the District Court for the appointment of counsel before he arbitrated his claim under the Jurors' Act. If the court determined that McNulty's claim had probable merit, the court could have appointed counsel to represent McNulty at arbitration.[1] McNulty, however, not only failed to apply for the appointment of counsel prior to having his claims heard and rejected by the arbitrators, but he was actually represented at arbitration by counsel. Therefore, McNulty cannot make out a claim asserting he was denied his qualified, statutory right to counsel under the Jurors' Act.[2]

The procedure of applying to a District Court for appointment of counsel to arbitrate a statutory claim is not unique to the Jurors' Act. Title VII of the Civil Rights Act, for example, specifies that a court "may" appoint counsel in cases which the court deems just. 42 U.S.C. § 2000e–5(f)(1); *see also Darden v. Illinois Bell Telephone Co.*, 797 F.2d 497, 500–03 (7th Cir.1986) (discussing the factors to be used by the District Court in weighing

---

1. The statute seems to contemplate that the application for counsel may be made independently of a proceeding addressing the merits of the underlying dispute. To apply for counsel, the plaintiff must "make application to the district court for the district in which the employer maintains a place of business...." 28 U.S.C. § 1875(d)(1). No such limit is placed upon where such suit may be brought.

2. It is worth noting that Magistrate Judge Azrack did not even find "probable merit" in McNulty's claim to warrant the appointment of counsel. McNulty has objected to this recommendation. The Court, however, need not decide whether his

claim has "probable merit" warranting the appointment of counsel since McNulty was represented by counsel at arbitration and since the Court by this order finds that the arbitration of the claim was binding upon him. In any event, the assessment of "probable merit" would not be made here. McNulty appears unable to show that his service on a federal grand jury was the cause of his demotion. The demotion was due to McNulty's failure to meet the production quota. McNulty was 13 percent short of the quota and the days missed because of jury duty amount to only 5.4 percent of his working time (assuming a 48 week work year).

applications under Title VII to appoint counsel). While this provision of Title VII does not confer the same right to have counsel appointed in all cases of probable merit as does the Jurors' Act, this provision appears to have been utilized in at least one case to appoint counsel to represent a claimant at arbitration. *See Bell v. Supermarkets General Corp.*, 1993 WL 429011, *3 (E.D.Pa., Oct. 20, 1993). Furthermore, the appointment of counsel provision of Title VII has not rendered Title VII claims non-arbitrable. *See Dean Witter Reynolds, Inc. v. Alford,* 500 U.S. 930, 111 S.Ct. 2050, 114 L.Ed.2d 456 (1991) (vacating and remanding decision which found Title VII claims to be non-arbitrable under the FAA for reconsideration in light of its decision in *Gilmer*); *Mago,* 956 F.2d 932; *Willis,* 948 F.2d 305.

 Based on the foregoing, the Court concludes that claims made under the Jurors' Act are arbitrable. Therefore, since McNulty was bound by the arbitration agreement that he signed to arbitrate all disputes with his employers, *see Gilmer,* 500 U.S. at 35, 111 S.Ct. at 1657 (finding the same arbitration clause contained in the same securities registration form and the same NYSE rule to be enforceable under the FAA), and since he lost at arbitration, he is not entitled to any relief from the Court.

As for the other claims in this case, since Magistrate Judge Azrack recommended dismissing all of them and since no objections were made to that portion of her report, the dismissal of those claims will stand so long as this Court is satisfied that they were not clearly erroneous. *See* Rule 72(b), Fed. R.Civ.Proc.; 28 U.S.C. § 636(b).

 Magistrate Judge Azrack correctly noted in her report and recommendation that prior to bringing a Title VII action, a plaintiff must first file a claim with a state or local fair employment commission or with the federal Equal Employment Opportunity Commission (EEOC). 42 U.S.C. § 2000e–5; *Great American Federal Savings & Loan Assoc. v. Novotny,* 442 U.S. 366, 371, 99 S.Ct. 2345, 2349, 60 L.Ed.2d 957 (1979). Since McNulty failed to file a claim with a federal, state, or local fair employment commission before bringing the current action, this Court lacks jurisdiction over the claim, and, therefore, Magistrate Judge Azrack was correct in noting that pursuant to Rule 12(b)(1), Fed. R.Civ.Proc., the claim must be dismissed. *See Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 46, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 797, 93 S.Ct. 1817, 1822, 36 L.Ed.2d 668 (1973); *Bertheas v. Trans World Airlines, Inc.,* 450 F.Supp. 1069 (E.D.N.Y.1978).

This Court is also satisfied that the Magistrate Judge was correct when she concluded that all claims against defendant Upton should be dismissed. Upton is an attorney who worked as in-house counsel for Prudential and represented Prudential in the arbitration with McNulty. Since McNulty alleges no acts by Upton for which he could be liable, all claims against Upton must be dismissed pursuant to Rule 12(b)(6).

Accordingly, the defendants' motion for summary judgment is granted and the case is dismissed.

SO ORDERED.