**Gerd J. GOLENIA, Plaintiff,**

v.

**BOB BAKER TOYOTA, Defendant.**

**No. 95–3836–J (POR).**

United States District Court,
S.D. California.

Feb. 16, 1996.

---

Bradford Lewis Nayfack, Timothy L. Brictson, Nayfack and Partyke, San Diego, CA, for Gerd J. Golenia.

James McDonald, Fisher and Phillips, Newport Beach, CA, for Bob Baker Toyota.

## ORDER GRANTING MOTIONS TO STAY AND COMPEL ARBITRATION

JONES, District Judge.

### BACKGROUND

Plaintiff Gerd J. Golenia's complaint charges Bob Baker Toyota with multiple violations of the Americans With Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213. Plaintiff worked as a salesperson at Bob Baker Toyota from June 20, 1994, to September 5, 1994. The allegations of ADA violations concern the conditions of his employment and termination. Plaintiff signed an employment agreement with an arbitration clause on May 9, 1994, the date that he applied for the position. In addition, on June 20, 1994, his first day of work, he signed a document evidencing receipt of the Employee Handbook, which also described the arbitration provisions, and a form entitled "Employee Acknowledgment of Receipt of Arbitration Policy," which referred the plaintiff to the

descriptions in the employment contract and the handbook.

Before the Court are defendant's motions to compel arbitration and to stay proceedings pending arbitration. Sections 3 and 4 of the FAA empower federal courts to stay actions subject to an arbitration agreement and to order a refusing party to abide by the procedures in the agreement. 9 U.S.C. §§ 3 (court must stay action pending arbitration if issues are referable under the agreement), 4 (court must enter order to follow arbitration procedures if applicable). Plaintiff argues in opposition (1) that the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–14, does not apply to employment contracts; (2) that the arbitration clause is unenforceable; and (3) that the arbitration clause, even if enforceable, does not represent a knowing and voluntary waiver of his ADA claims. For the reasons stated below, the Court rejects each of these arguments, and grants the motions to stay and compel arbitration.

## APPLICABILITY OF FEDERAL ARBITRATION ACT

■ Plaintiff argues that the FAA does not apply to employment contracts because of section 1's exclusion of "contracts of employment of seamen, railroad employees, *or any other class of workers engaged in foreign or interstate commerce.*" 9 U.S.C. § 1 (emphasis added). He cites *Mittendorf v. Stone Lumber Co.,* 874 F.Supp. 292, 294–95 (D.Or.1994), which held that the italicized language operates to exempt all employment contracts, not just those for workers involved directly in interstate commerce.

This issue was left open by the Supreme Court in *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 25 n. 2, 111 S.Ct. 1647, 1651 n. 2, 114 L.Ed.2d 26 (1991) (declining to decide issue raised by amici curiae whether section 1 "excludes from the coverage of the FAA *all* 'contracts of employment'" because the clause at issue was not contained in a contract of employment). The Ninth Circuit has not yet ruled on it. *See Mago v. Shearson Lehman Hutton Inc.,* 956 F.2d 932, 934 (9th Cir.1992) (noting that FAA's application to employment contracts was unresolved, but declining to reach issue because not raised

below). The one-line dictum in *Herring v. Delta Air Lines, Inc.,* 894 F.2d 1020, 1023 (9th Cir.1989) does not bind this court.

The majority of the circuits that have addressed this issue have concluded that the exclusion should be narrowly construed to apply only to workers who, like the enumerated classes of seamen and railroad workers, are involved directly in interstate transportation of goods. *See Dickstein v. duPont,* 443 F.2d 783, 785 (1st Cir.1971); *Erving v. Virginia Squires Basketball Club,* 468 F.2d 1064, 1069 (2d Cir.1972); *Tenney Eng'g, Inc. v. United Elec. Radio & Mach. Workers,* 207 F.2d 450, 452 (3d Cir.1953); *Asplundh Tree Expert Co. v. Bates,* 71 F.3d 592, 596–602 (6th Cir.1995) (rejecting earlier dictum in *Willis v. Dean Witter Reynolds,* 948 F.2d 305, 311 (6th Cir.1991); *Miller Brewing Co. v. Brewery Workers Local No. 9,* 739 F.2d 1159, 1162 (7th Cir.1984), *cert. denied,* 469 U.S. 1160, 105 S.Ct. 912, 83 L.Ed.2d 926 (1985). Justice Stevens, dissenting in *Gilmer,* indicated his belief that the exclusionary clause should be read as excluding all employment contracts. However, the only circuit that has announced such a rule is the Fourth. In 1954 the Fourth Circuit decided, in an expressly limited holding, that the FAA does not apply to arbitration clauses in collective bargaining agreements because these were employment contracts, and indicated that it would probably apply the same rule to other employment agreements. *See United Elec. Radio & Mach. Workers v. Miller Metal Prods.,* 215 F.2d 221, 224 (4th Cir.1954). The viability of this decision is questioned by courts even within the Fourth Circuit. *See Kropfelder v. Snap–On Tools Corp.,* 859 F.Supp. 952, 958 (D.Md.1994) (opining that Fourth Circuit would not apply *Miller* to non-collective bargaining agreements).

In *Asplundh,* the Sixth Circuit reversed its prior dictum, announced in *Willis,* that employment agreements were excluded from the FAA's scope, based upon the following considerations: (1) the legislative history indicates that Congress was specifically concerned with seaman and railroad workers, implying a lack of any intent to exclude others; (2) the language of the exclusionary clause of section 1 uses narrower terms than

the scope provisions of section 2; and (3) the policy of the act supports the result of broad application. *See Bates,* 71 F.3d at 596–602. The Court finds the reasoning in *Asplundh* persuasive and holds that the exclusionary clause in section 1 of the FAA should be narrowly construed to cover only workers directly involved in the interstate transportation of goods.

### ENFORCEABILITY OF THE CLAUSE

Plaintiff argues that the clause in unenforceable because (1) the plaintiff did not read the clause before signing the employment agreement or the "Acknowledgement of Receipt of Arbitration Policy"; and (2) the clause is an oppressive term in an adhesion contract.

■ Section 2 of the FAA provides that an arbitration clause may be attacked "upon such grounds as exist at law or in equity for the revocation of any contract." This section has been interpreted to create a federal substantive law of arbitrability. *See Bayma v. Smith Barney, Harris Upham and Co., Inc.,* 784 F.2d 1023, 1024–25 (9th Cir.1986) (citing *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 (1983) ("The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act."). California state law of contracts, while informative where it conforms to federal law, does not control.

■ The plaintiff may not argue that he is not bound because of his own failure to read the contract, especially given the boldfaced all-caps admonition in the agreement not to sign it prior to reading and understanding its terms. *See Madden v. Kaiser Foundation Hospitals,* 17 Cal.3d 699, 710, 131 Cal.Rptr. 882, 552 P.2d 1178 (Cal.1976) (describing "general rule" that "one who assents to a contract is bound by its provisions and cannot complain of unfamiliarity with the language of the instrument"). *Madden* also rejected the plaintiff's argument that the arbitration agreement at issue was a contract of adhesion. The California Supreme Court relied in part upon the observation that arbitration agreements do not bear the essential feature of adhesion clauses, which "limit the obligations or liability of the stronger party." *Id.* at 711. Rather, arbitration "substitut[e] one forum for another," and not necessarily an inferior forum. *Id.* This adhesion analysis is consistent with the strong federal policy favoring arbitration. *See Moses H. Cone Hospital v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983) ("Section 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary."). Although it is not inconceivable that an arbitration clause might be written in such a way as to favor one side, the clause in this case applies equally to both parties: both give up the right to trial by jury and agree to abide by the procedures described. Neither state nor federal law would find such a clause unenforceable.

### APPLICABILITY OF THE CLAUSE TO ADA CLAIMS

Plaintiff also argues that the clause, even if otherwise enforceable, may not be enforced as to his ADA claims because (1) the language of the clause does not specifically state "ADA claims"; and (2) ADA claims may not be waived until after the cause of action accrues. These arguments are all in error.

■ Plaintiff cites two recent Ninth Circuit cases in support of his first argument, *Prudential Ins. Co. of America v. Lai,* 42 F.3d 1299 (9th Cir.1994), *cert. denied,* —— U.S. ——, 116 S.Ct. 61, 133 L.Ed.2d 24 (1995), and *Felt v. Atchison, Topeka & Santa Fe Ry. Co.,* 60 F.3d 1416, 1420 (9th Cir.1995). In *Prudential,* the Ninth Circuit held that a Title VII claim was not arbitrable under a contract containing an agreement to arbitrate "any dispute, claim or controversy that may arise between me or my firm ... that is required to be arbitrated under the rules, constitutions, or bylaws of the organizations with which I register." The Court referred also to an employee manual that stated that "[a]ny dispute .. arising in connection with the business of such member(s) or in connection with the activities of such associated

person(s) shall be arbitrated ..." *Pruden-tial*, 42 F.3d at 1302. Neither the original contract nor the manual were specific enough as to the Title VII claim to constitute knowing and voluntary elections to use the arbitration forum. *Id.* at 1305. *Felt* is simply not instructive on this issue: it does not provide the language of the arbitration agreement and is decided on other grounds. *Felt*, 60 F.3d at 1420.

The plaintiff would have the Court read these decisions as holding that the arbitration clause must specifically name the statute, or describe with particularity the class of statutes—e.g., "civil rights statutes"—whose procedures are to be waived in favor of arbitration. This is not required. *Prudential* emphasized the lack of any reference to "employment disputes." The language of the clause in this case refers to arbitration "any dispute or controversy which would otherwise require or allow resort to any court or other governmental dispute resolution forum, between myself and the Company, arising from, related to, or having any connection with my seeking employment with, employment by, or other association with, Company, whether based on tort, contract, statutory, or equitable law, or otherwise ..." More cannot be reasonably required in view of the Supreme Court's rule that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation or waiver, delay, or a like defense to arbitrability." *Moses H. Cone Hospital*, 460 U.S. at 24–25, 103 S.Ct. at 941–942.

The argument that ADA claims require some higher form of waiver than other statutory claims must also be rejected. It is well settled that statutory claims such as Title VII and ADEA claims may be waived in an agreement to arbitrate. *See Gilmer*, 500 U.S. at 35, 111 S.Ct. at 1657 (ADEA); *Mago*, 956 F.2d at 935 (Title VII). Plaintiff does not cite one case that actually supports his argument that ADA claims must be waived only after they accrue. *DiPuccio v. United Parcel Service*, 890 F.Supp. 688 (N.D.Ohio) cited legislative history that agreements to arbitrate, as waivers of statutory rights,

should be express and voluntary, and held that a collective bargaining agreement could not constitute such a waiver. *Id.* at 692. The ADA itself betrays no indication of special hostility to arbitration; to the contrary, the Act states that the use of "alternative means of dispute resolution, including ... arbitration, is encouraged to resolve disputes arising under this chapter." 42 U.S.C. § 12212. Further, the reasoning of the Ninth Circuit in extending *Gilmer* to Title VII claims, that the "statutes are similar in their aims and substantive provisions," *Mago*, 956 F.2d at 935, would apply equally to ADA claims. Finally, the Court notes the recent introduction by Senator Feingold of a bill that would amend the ADA by adding a section rendering the statutory enforcement scheme exclusive "unless after such claim arises the claimant voluntarily enters into an agreement to resolve such claim through arbitration or other procedure." S. 366, 104th Cong., 1st Sess. § 5 (1995) (currently pending before Committee on Labor and Human Resources). This bill would be meaningless were plaintiff's version of the law true.

## CONCLUSION

The Federal Arbitration Act applies to this case and mandates that the arbitration be compelled. Plaintiff's attack on the enforceability of this clause fails under settled principles of contract law. The Court rejects plaintiff's arguments that civil rights statutes must be specifically named in order to be waived, and that the ADA requires a higher standard of waiver than other civil rights statutes.

The motion to stay and compel is granted. Plaintiff's ADA claim shall be arbitrated in accordance with the procedures described in the employment agreement. This action shall be stayed pending the conclusion of that arbitration.

**IT IS SO ORDERED.**